(No. 19638.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. T. H. KLAPPERICH, Plaintiff in Error.

*Opinion filed February 21, 1930.*

MARK HANNAN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JOEL C. FITCH, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE SAMUELL delivered the opinion of the court:

The grand jury of the criminal court of Cook county returned an indictment against T. H. Klapperich, plaintiff in error, and R. F. Brookstone and Albert L. Kaufman, at the October term, 1923. The indictment contained six counts, the first, second, fifth and sixth of which charged

the defendants with conspiracy. The fourth count charged the keeping of a bucket-shop, and the third count, being the only count with which we are concerned, charged the defendants with obtaining certain sums of money and personal property of Charles V. Hult by means and use of the confidence game on March 13, 1923. A *nolle prosequi* was subsequently entered as to Brookstone. In December, 1924, the cause proceeded to trial against Klapperich and Kaufman, and the jury returned a verdict finding them guilty of obtaining money and property by means of the confidence game, as charged in the third count of the indictment. A motion for new trial was allowed in March, 1925. At the following December term Kaufman was acquitted and Klapperich was again convicted, the jury returning a verdict finding him guilty of obtaining money and property by means and use of the confidence game, as charged in the third count. Motions for a new trial and in arrest of judgment were overruled and plaintiff in error was sentenced to the penitentiary. This writ of error is prosecuted to review that judgment.

The evidence shows that plaintiff in error was president of Warren, Lois & Co., a brokerage concern incorporated under the laws of this State and dealing in stocks and bonds. The company maintained an office in the city of Chicago and had about 800 customers at the time of the alleged commission of the crime. In the latter part of January, 1923, Kaufman, one of the company's salesmen, solicited and induced the complaining witness, Hult, to purchase stocks through the company. This solicitation was made by telephone. It appears from Hult's testimony that Kaufman called Hult on the telephone and told him that he was Kaufman, from Warren, Lois & Co., stock brokers, and had some good stock he wanted to sell to Hult. Hult told him he was not interested in the stocks, but Kaufman said he had only five shares of Reo motor stock which Hult could purchase at $13.75 a share, and that he could buy the

stock on margin, paying only $32 and that the company would carry the balance. Hult thereupon ordered the stock. Kaufman and Hult did not meet personally until February 21, 1923. Hult testified that he signed a "margin agreement" on January 31, 1923. This agreement provided, among other things, that whenever the margin on the account of the signer should become reduced to the extent when it should become necessary to take immediate steps for mutual protection, the company should have the right, in its discretion, to sell any or all securities carried in the account or to close out the account on any recognized exchange or at public or private sale, all without further notice or demand for more margin to the signer. Thereafter Hult continued to buy and sell stocks through Kaufman, and in each instance received by mail from Warren, Lois & Co. confirmation slips showing the amount of stocks bought or sold for his account. In no instance did Hult pay in full for the stock but continued to purchase on the margin plan. Hult testified that about March 11, 1923, Kaufman called him by phone and asked if he, Hult, could pay for his stock in full, advising him that the amount required would be $10,616.08; that Hult answered that he did not have enough money to make the payment; that Kaufman told him that dividends had been declared on a part of his stock to the amount of $2350, and that if he would give his note for $3000 and pay $5046 in cash he could have the stock; that Hult thereupon sent his note for $3000, due thirty days after date, to Kaufman, and on March 13 went to the office of Warren, Lois & Co. and after paying Kaufman $5046 called for his stock; that Kaufman told him that the stock had not arrived from the East but would be there in a day or two; that on March 15 he again demanded his stock, and Kaufman told him that there was a mistake about the dividends and that they had not been paid, and consequently there was not sufficient credit to Hult's account and that the stock could not be

delivered. Hult appears to have acquiesced. The $3000 note which Hult had given was sent to the bank for collection by Warren, Lois & Co and returned by the bank with the notation, "No attention." On April 16 Hult called at the office of Warren, Lois & Co. to see about this note, and there for the first time met plaintiff in error, Klapperich; that Hult at that time wanted to procure a part of his stock in order to borrow money upon it and thus pay the note; that plaintiff in error suggested that he would give him an extension of thirty days on the note if he desired, charging him only six per cent interest; that his margin was not sufficient to allow him to take any of the stock certificates. Hult agreed to this extension. On May 31, 1923, Warren, Lois & Co. mailed to Hult a call, calling for additional margin of $5093.64; that Hult paid no attention to this margin call, and that several days later War-ren, Lois & Co. closed out the account by selling all of the stock held in Hult's account. The evidence further tended to show that Hult lost about $11,600 in these transactions. Several other witnesses testified for the State, but all their testimony amounted to was that they had bought stocks on margin through Warren, Lois & Co. and had lost their money through decline in the market. All of these witnesses purchased their stock on margin and under agreements similar to the one executed by Hult.

Hult testified that he had met plaintiff in error but twice, the first time being on April 16, 1923, and the second time being in January, 1924, when plaintiff in error called at Hult's place of business relative to a settlement with Hult. He further testified that plaintiff in error had never asked him to buy any stock and that all of his dealings in stock were handled by Kaufman and one Blowitz, another salesman of the company. There is nothing in the record to show that any of the representations made by Kaufman were known to Klapperich or in any way authorized by him. There is evidence in the record showing that certain

dividends were declared upon the stock purchased by Hult, although not in the amount which Hult claims was represented by Kaufman.

Plaintiff in error contends that the State failed to prove the crime of obtaining money or property by use of the confidence game. The statute defines confidence game to be the procuring from a person of his property or money by means or by use of any false or bogus check or by any other means, instrument or device commonly called the confidence game. To justify a verdict of guilty the proof must show that the defendant by the use of false statements, misrepresentations or pretenses secured the confidence of the complaining witness, and that, having secured such confidence, he defrauded him of his money or other property. (*People* v. *Santow*, 293 Ill. 430; *People* v. *Perlmutter*, 306 id. 495.) In the *Perlmutter case* we said: "To constitute the confidence game the party charged must by the use of a false or bogus check, or by some means, instrument or device commonly called the confidence game, have secured the confidence of the victim, and having so secured it for the purpose of defrauding him, obtained his money or property. In other words, he must by the fraudulent instrument or means used have obtained his confidence for the purpose of swindling him."

Testing the proof adduced by the prosecution in the instant case by the rule above stated, it is obvious that it fails to establish plaintiff in error's guilt of the crime of obtaining money or property by use of the confidence game. The complaining witness and the plaintiff in error did not meet until April 16, 1923, more than a month after the alleged offense as charged in the indictment. Plaintiff in error testified that he was not acquainted with Hult or with any of his transactions with the company until the meeting on April 16, 1923, when Hult arranged for the extension of his note. Hult admitted that plaintiff in error did not at any time ask him to buy any stock, nor did plaintiff

in error make any representations to him about any stock or dividends. There is nothing in the record to show that Hult reposed any confidence in plaintiff in error or that he bought or sold any stock or paid any money by reason of anything said or done by plaintiff in error, and this conviction could be sustained, if at all, only upon the theory that Kaufman and plaintiff in error conspired together to defraud Hult by means of the confidence game. We think, however, that the evidence fails to show that the crime charged in the indictment was committed either by Kaufman or plaintiff in error. Kaufman may have been guilty of obtaining money by false pretense, but he was not guilty of the crime of obtaining money or property by the use of the confidence game. Kaufman was not, by reason of his employment, authorized to make false representations in regard to the stock which he was employed to sell, nor was Klapperich bound by any representations made by him which Klapperich did not authorize. (*People* v. *Massie,* 311 Ill. 319.) The record before us does not show whether the representations made by Kaufman were false or true. Even if the representations were false, it is not proved that Klapperich had knowledge of them.

Hult was an experienced business man and had bought and sold stocks prior to his dealings with Kaufman. When he bought stocks on margin through Kaufman he knew he was speculating upon the market. The evidence shows that Warren, Lois & Co. actually purchased for Hult's account every stock which he ordered. When the market declined in May, 1923, the company sent him a margin call, notifying him that he must deposit additional margin to protect his stock. This notice he ignored, and the company had the right to sell his stock under the terms of the margin agreement signed by Hult. So far as the record discloses, the only confidence shown to have been reposed by Hult was his confidence in Kaufman's business judgment, but the fact that Kaufman's judgment may have been bad does

not make him guilty of obtaining money or property by means of the confidence game. *People* v. *Massie, supra.*

We are of the opinion that the evidence fails to show that the crime charged in the indictment was committed, and the judgment is therefore reversed.

*Judgment reversed.*